```
                                                                    USDC SDNY
                                                                    DOCUMENT
                                                                    ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                        DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                                       DATE FILED: September 5, 2013
------------------------------------------------------------X
JEFF WAGNER,                                                :
                                                            :
                                    Plaintiff,              :        12 Civ. 8726 (PAC)
    -against-                                               :        OPINION & ORDER
                                                            :
THE ROYAL BANK OF SCOTLAND GROUP PLC,                       :
RFS HOLDINGS B.C., RBS HOLDINGS N.V., and THE               :
ROYAL BANK OF SCOTLAND N.V.,                                :
                                                            :
                                    Defendants.             :
    -and-                                                   :
                                                            :
LYONDELLBASELL INDUSTRIES, N.V.                             :
                                                            :
                                    Nominal Defendant.      :
------------------------------------------------------------X
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Jeff Wagner ("Wagner"), a shareholder of nominal defendant LyondellBasell Industries, N.V. ("LBI"), seeks to recover from defendants Royal Bank of Scotland Group PLC ("RBS Group"), Royal Bank of Scotland N.V. ("RBS NV"), RBS Holdings B.V., and RFS Holdings N.V. (collectively, the "RBS Defendants") short-swing profits allegedly realized from transactions in LBI's securities, pursuant to Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)"). The RBS Defendants moved to dismiss Wagner's claim on May 31, 2013, asserting that the transactions at issue are exempt from Section 16(b) and that they do not implicate Section 16(b)'s animating concerns. For the reasons set forth below, Defendants' motion to dismiss is DENIED.

## BACKGROUND

LBI was formed in 2009. In late 2010, LBI had two outstanding classes of shares, Class A ordinary shares and Class B ordinary shares, both of which were registered with the Securities and Exchange Commission ("SEC") on October 13, 2010. The Class B shares were structured to

1

automatically convert into Class A shares upon the occurrence of certain specified events, which happened on December 6, 2010. At all times between October 13 and December 6, 2010, each RBS Defendant beneficially owned more than 10% of outstanding Class A shares, subjecting them to Section 16(b). See 15 U.S.C. § 78p(a)(1).

In October, 2010, RBS NV entered into several swap agreements with various counterparties. Each swap agreement related to a specified basket of equities and, under each such agreement, the counterparty agreed to pay RBS NV an amount equal to any increase in the equity basket's value plus any dividends declared on the equities contained in the basket, while RBS NV agreed to pay the counterparty an amount equal to any decrease in the equities' value. The composition of the equity baskets was determined by the RBS Group or its subsidiaries, which also retained discretion to add or remove securities from the basket throughout the lifetime of the swap agreement.

Several of the swap agreements related to, *inter alia*, LBI's Class B shares. Specifically, on October 26, RBS NV entered a swap agreement for which the equity basket contained 82,000 Class B LBI shares. On October 27, it entered into another swap agreement for which the equity basket contained 52,235 Class B LBI shares. Additionally, on October 26, October 29, and November 9, the RBS Group added 108,256 Class B LBI shares, 100,000 Class B LBI shares, and 150,000 Class B LBI shares, respectively, to swap agreements previously entered into by RBS NV. Wagner alleges that each of these transactions, shown in the chart below, was equivalent to purchasing the same quantity of Class B LBI shares, which, in turn, was equivalent to purchasing Class A LBI shares.

| Date | Number of Shares | Price per Share | Total Value |
|---|---|---|---|
| October 26, 2010 | 190,256 | $27.72 | $5,273,896.32 |
| October 27, 2010 | 52,235 | $27.21 | $1,421,314.35 |
| October 29, 2010 | 100,000 | $26.86 | $2,686,000.00 |
| November 9, 2010 | 150,000 | $28.44 | $4,266,000.00 |
| Total: | 492,491 | | $13,647,210.67 |

(Compl. ¶¶ 28, 31.) RBS NV subsequently sold Class A shares, as shown in the chart below:

| Date | Number of Shares | Price per Share | Total Value |
|---|---|---|---|
| November 30, 2010 | 682,760 | $29.28 | $19,991,212.80 |
| December 1, 2010 | 682,760 | $29.91 | $20,421,351.60 |
| December 2, 2010 | 2,000,000 | $29.95 | $59,900,000.00 |
| December 3, 2010 | 1,661,016 | $30.44 | $50,561,327.04 |
| Total: | 5,026,536 | | $150,873,891.44 |

(Id. at ¶ 33.)

Using the "lowest-in, highest-out" method for computing realized profits, Plaintiff alleges that the RBS Defendants earned $1,344,215.37 from these transactions. On July 25, 2011, an LBI shareholder requested that LBI seek disgorgement of the RBS Defendants' short-swing profits, which LBI failed to do. Wagner subsequently filed this action on November 30, 2012.

## DISCUSSION

### I. Legal Standard

When considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and construe the complaint in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007). "Further, courts are normally required to look only at the allegations on the face of the complaint, though they may also consider documents attached to the complaint or incorporated into it by reference, any

3

documents that are integral to the Plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice." Universal Trading & Inv. Co., Inc. v. Tymoshenko, No. 11 Civ. 7877, 2012 WL 6186471, at *1 (S.D.N.Y. Dec. 12, 2012) (internal quotations omitted). The Court only "assess[es] the legally feasibility of the complaint;" it does not "assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003). To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

Section 16(b) "was designed to prevent an issuer's directors, officers and principal stockholders 'from engaging in speculative transactions on the basis of information not available to others.'" Donoghue v. Bulldog Investors Gen. P'ship, 696 F.3d 170, 173-74 (2d Cir. 2012) (quoting Huppe v. WPCS Int'l Inc., 670 F.3d 214, 218 (2d Cir. 2012)). "As indicated by the 'irrespective of any intention' clause in Section 16(b), that section is a strict-liability provision; it 'requires the inside, short-swing trader to disgorge all profits realized on all purchases and sales within the six-month period, without proof of actual abuse of insider information, and without proof of intent to profit on the basis of such information." Roth v. Jennings, 489 F.3d 499, 507 (2d Cir. 2007) (quoting Kern Cnty. Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 595 (1973)). "Suits can be maintained either by the company or derivatively by a shareholder." Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998). To succeed on a

Section 16(b) claim, the plaintiff must prove that there was "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder how owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." Id.

**II. Analysis**

    a. Rule 16a-13 Exemption

The RBS Defendants move to dismiss on two grounds. First, they assert that "[e]ach of the five acquisitions [of interests in LBI shares] . . . resulted from Swap Transactions between RBS N.V. and various Counterparty Funds, in which RBS N.V. sold [LBI] shares to the Counterparty Funds, and those Counterparty Funds swapped back to RBS N.V. the economic performance of those shares." (Def. Br. at 12.) Accordingly, they contend that these transactions "effect[] only a change in the form of beneficial ownership without changing [Defendants'] pecuniary interest in the subject equity securities," rendering them exempt from Section 16(b). 17 C.F.R. § 240.16a-13. The Court does not reach this issue, however, because the facts upon which this defense is predicated cannot be considered upon a motion to dismiss.

The RBS Defendants rely on the RBS Group's Statement of Changes in Beneficial Ownership of Securities (Starr Decl. Ex. 1 ("Form 4")), filed with the SEC on July 22, 2011, more than six months after the transactions at issue, to establish its ownership of the LBI shares prior to the acquisitions alleged in the complaint. Prior ownership is not alleged in the complaint. Although the Court may take judicial notice of documents filed with the SEC, it "is to consider them on a Rule 12(b)(6) motion 'only to determine *what* the documents stated,' and '*not to prove the truth of their contents*.'" Roth, 489 F.3d at 509 (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)) (emphasis in original); see also Chechele v. Scheetz, 466 Fed. Appx. 39, 40-41 (2d Cir. Mar. 9, 2012) (affirming dismissal of Section 16(b)

claim where "[t]he district court declined to consider certain SEC filings, which were not incorporated into the complaint, for the truth of their assertions. This was not in error.").

Cortec Indus., Inc. v. Sum Holding, LP, 949 F.2d 42 (2d Cir. 1991), upon which the RBS Defendants rely, is not to the contrary. Cortec was a securities fraud case in which the Second Circuit found that the district court erred by relying solely on facts alleged in the plaintiffs' complaint and declining to consider a stock purchase agreement, offering memorandum and warrant that were attached to the defendant's moving papers. Id. at 46-48. In fraud cases, however, "courts take[] judicial notice . . . in order 'to determine *what* statements [the documents] contained" because liability hinges on "whether . . . facts were disclosed" or "representation[s] . . . made." Roth, 489 F.3d at 509 (quoting Kramer, 937 F.2d at 774) (emphasis in original). Here, by contrast, the RBS Defendants rely on Form 4 not to demonstrate that certain statements were included or omitted, but rather to establish the truth of the matters asserted in those statements. That is not permitted. Cf. 5 Weinstein's Federal Evidence § 801.11 (2d Ed. 2008) ("When a witness testifies in court, the trier can assess the witness's perception, narration and memory to determine whether the testimony accurately represents the facts observed. . . . Because the safeguards that apply to a witness do not exist in regard to a declarant, an out-of-court statement offered for its truth is hearsay and is generally not admissible.).

Even if this were not so, Form 4 would still not suffice on its own to establish the facts that the RBS Defendants attempt to extract from it. There are several discrepancies between the statements made in Form 4 and certain facts claimed in the RBS Defendants' moving papers. Without repeating those arguments in their particulars, none of which are specifically addressed in the RBS Defendants' reply brief, and having reviewed Form 4, the Court concurs with the RBS Defendants' previous concession that Form 4 is "not . . . a model of clarity." (Hr'g Tr. 9:14-

15, May 1, 2013.)  Since "all reasonable inferences must be drawn in favor of the plaintiff," Frazier v. Coughlin, 850 F.2d 129, 129 (2d Cir. 1988), Form 4 does not establish that the transactions fall within 17 C.F.R. § 240.16a-13's exemption.

> b. Implication of Section 16(b)'s Animating Concerns

The RBS Defendants also argue that the Court should decline to extend the reach of Section 16(b) to the transactions at issue because they are far afield from trading on inside information and do not implicate the concerns that animate Section 16(b).  While courts in the Second Circuit "scrutinize borderline or unorthodox transactions pragmatically to determine whether they serve as a vehicle for the evil which Congress sought to prevent – the realization of short-swing profits based upon access to inside information," they do so only where the "prerequisites" of "(1) an involuntary transaction by an insider (2) having no access to inside information" are met.  Huppe, 670 F.3d at 218-19 (internal quotations omitted).  Defendants do not argue that this is such a case and, at this early stage of litigation, the record does not support such a finding.  The Second Circuit "ha[s] been clear that Section 16(b) should be applied without further inquiry if there is 'at least the possibility' of speculative abuse of inside information."  Id. at 219 (quoting Blau v. Lamb, 363 F.2d 507, 519 (2d Cir. 1966).  "Congress believed that such a blunt instrument was the only way to control insider trading," and, accordingly, designed Section 16(b) to "operate[] mechanically, and make[] no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition."  Magma Power Co. v. Dow Chem. Co., 136 F.3d 316, 320-21 (1998).  At the present stage, Defendants have yet to demonstrate that no such possibility exists.

The RBS Defendants also rely on interpretive guidance provided by the SEC to Goldman Sachs and Davis Polk and Wardwell LLP, both of which explained that Section 16(b) was not

applicable to specified transactions because the parties in question "would not have a pecuniary interest" in the securities at issue. SEC No-Action Letter to Davis Polk & Wardwell LLP, 2012 WL 6951979, at *1 (Jan. 28, 2013); see also SEC No-Action Letter to Goldman Sachs & Co., Fed. Sec. L. Rep. ¶ 77,218, 1996 WL 305718, at *1 (June 7, 1996). The SEC's conclusions were based on the specific transactional details set forth in two letters and "any different facts or conditions might require a different conclusion." Goldman-Sachs Letter, 1996 WL 305718, at *1. The RBS Defendants' transactions, either as described in the complaint or in Defendants' moving papers, are quite different from those at issue in the SEC's no-action letters. Moreover, the RBS Defendants do not argue that they lacked a pecuniary interest in the LBI securities, but explicitly admit the opposite. (See, e.g., Def. Br. at 12 ("RBS N.V. had the *same* pecuniary interest in the [LBI] securities both before *and* after they were sold to the Counterparty funds. . . . before each Swap Transaction, RBS N.V. directly owned the [LBI] securities; after each Swap Transaction, RBS N.V. indirectly owned those same shares." (emphasis in original).)

Since the RBS Defendants have not argued that Section 16(b) is not applicable for any reason other than the exemption rejected *supra*, their arguments that Section 16(b) should nevertheless not apply to them are rejected.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at docket number 11. The defendants shall answer the complaint. The parties are directed to confer and submit a civil case management plan to the Court by September 27, 2013.

Dated: New York, New York
       September 5, 2013

SO ORDERED

_____
PAUL A. CROTTY, U.S.D.J